15213

PARKER PEANUT CO. v. M. H. FELDER & CO., ALLEN v.
FELDER *ET AL.*

(13 S. E. (2d), 143)

The order of Judge Mann requested to be reported follows:

This action is a consolidation of the creditors' bills brought against M. H. Felder & Company by Parker Peanut Company and Bob Clark, trading as Clark Tire Company, respectively, in which the insolvency of M. R. Felder & Company was alleged and receivership sought. In due course, P. F. Haigler was appointed Receiver of M. H. Felder & Company in the Clark suit, and the two actions

were subsequently merged under an order of this Court dated April 18, 1940.

After the two creditors' bills were merged, Charles R. Allen on behalf of himself and all other creditors of M. H. Felder & Company instituted this proceeding ancillary to the creditors' bills above mentioned for, among other things, the purpose of stripping the corporate veils from the defendants, M. H. Felder & Company, M. H. Felder Real Estate Company, and M & H Grocery Company, and holding the defendants M. H. Felder and Grace K. Felder liable as an association of persons. On May 14, 1940, I issued a rule requiring the defendants to show cause before me on May 24, 1940, why a Receiver should not be appointed to take charge of their assets and affairs.

On the return date, counsel for Charles R. Allen stated to the Court that the return of the defendants showed the net assets of the defendants to be less than their net liabilities and moved that his complaint be amended by adding the following paragraph: "That, on information and belief, if this Court applies the instrumentality rule, the assets of the aforesaid corporations, M. H. Felder and Grace K. Felder are insufficient to pay the liabilities of the said corporations, M. H. Felder and Grace K. Felder; in consequence of which and the matters and things hereinabove alleged the aforesaid corporations, M. H. Felder and Grace K. Felder taken as a group are insolvent and their assets should be taken in custody by the Court for the protection of creditors."

I deferred ruling on the above motion until I could have an opportunity to hear the parties on the issue of receivership. By an order hereinafter referred to I have granted the motion to amend; in consequence of my setting out the amendment in full the necessity of serving an amended complaint is obviated, and the Court, together with the parties to this action, will hereafter consider the above amendment as a part of the complaint.

On May 24th, I referred certain issues to the Honorable John S. Bowman, County Judge, as special Referee, under the circumstances and for the reasons set out in my order of that date. It appears that Judge Bowman held a reference on May 30th, at which time a great deal of evidence was introduced on behalf of the plaintiff. When the plaintiff completed his examination of the witness W. H. Rousseau, the defendants moved for a continuance in order that they might have an audit made of the books of M. H. Felder & Company. Judge Bowman granted this continuance.

It appears that the defendants, following the continuance granted by Judge Bowman, demanded possession of the books of M. H. Felder & Company, which were at that time in the hands of the Receiver; and that this demand was refused by the Receiver. The parties appeared before me on June 1st, on motion of the defendants for an order directing the Receiver to turn over the books of M. H. Felder & Company to the defendants. I ruled that the books and records of M. H. Felder & Company should remain in the possession of P. F. Haigler and his agents and that the defendants should be afforded access to the said books, that the defendants, their attorneys and auditors should be afforded access to the said books for the purpose of making such audit as to them might seem advisable. I thereupon withdrew all issues from the special Referee, and by agreement of counsel I set a reference for Tuesday, June 4th. The reference before me was closed late in the afternoon on Wednesday, June 5th, after all parties had been given full opportunity to introduce any evidence that they thought advisable. On Friday, June 7th, I heard arguments by all parties, and on Saturday, June 8th, I filed a brief order stating therein that I would subsequently file a supplemental order fully disposing of all issues before me, which I will endeavor to do by this order.

Under plaintiff's rule injunctive relief and receivership were sought. The granting of a complete receivership ob-

viates the necessity for injunctive relief; therefore, I will state my views of this case with relation to the issue of receivership only.

The Court is fully cognizant of the fact that the power to appoint a Receiver is a delicate one and should be exercised with great circumspection; and while the order is interlocutory and somewhat administrative in character, its effect may be far-reaching—particularly in a case of this kind. With these thoughts in mind, the litigants, particularly the defendants, have been allowed great latitude in their presentation to the Court.

While it is true that the answers of the defendants were filed prior to the hearing before me no attempt is here made to adjudicate the merits. The question remaining uppermost in the mind of the Court has been, "Has the plaintiff made a *prima facie* showing that the conduct of the defendants has been such and is the state of the affairs of the defendants such that the Court should take possession of their assets pending an adjudication of the merits in order that these assets may be preserved for the benefit of creditors?" The Court is also cognizant and at this time specifically states that only a *prima facie* showing has been made of the facts hereinafter set forth and that upon a hearing on the merits they may be explained away and in all respects refuted.

As previously stated, the evidence submitted in response to the rule is voluminous and it would be impossible for the Court to relate the facts in detail as they were made to appear; however, I will attempt to outline the situation and facts as they were developed at the hearing.

During the month of December, 1922, M. H. Felder & Company was chartered by the State of South Carolina with a capital stock of $1,000.00 to engage in a wholesale fruit, produce and grocery business, with M. H. Felder and Grace K. Felder as its only stockholders and officers. From the date of its organization there has been no change in its capitalization, officer personnel or stock ownership.

During the month of May, 1924, M. H. Felder Real Estate Company was chartered by the State of South Carolina with a capital stock of $1,000.00 to engage in a real estate business. Upon its organization, M. H. Felder and Grace K. Felder were the sole stockholders and officers. There has been no change in its capitalization, stock ownership or officer personnel since its organization.

Apparently no stock or minute book has ever been kept for either of these corporations.

Although M. H. Felder & Company handled a large volume of business during its latter years—in fact, it appears that this business would exceed $300,000.00 a year—it had no bookkeeping system prior to 1937. On the demand of the tax collecting officials for the State and Federal Government, certain books were opened by the corporation during the year 1937 to meet this demand, but this system was grossly inadequate to meet the demands of good business practice. On January 1, 1939, W. H. Rousseau & Company installed an adequate bookkeeping system. Mr. Rousseau testified, however, that the books were set up with information furnished by M. H. Felder and that no effort was made by W. H. Rousseau & Company to verify the accuracy of the facts furnished by Mr. Felder for this purpose.

It has never been made to appear that M. H. Felder Real Estate Company kept any books whatever. In fact, I gather from the testimony that no such books were ever kept.

M. H. Felder Real Estate Company was organized for the purpose of defeating the dower rights of a divorced wife of M. H. Felder in his real estate holdings. The capital with which this corporation was organized consisted of the portion of the estate of F. J. D. Felder, father of M. H. Felder, inherited by the said M. H. Felder. The records in the office of the Judge of Probate indicate that this interest was worth not more than $8,500.00. There is no evidence in the record of M. H. Felder Real Estate Company having received capital assets from any other source, and there is no evidence in the record of any transactions by which it

could have materially increased its surplus. There are transactions in the record which show material losses by that company. Sworn returns were filed setting forth a net worth of the company in excess of $30,000.00. While it is true that M. H. Felder testified that he received $50,000.00 as his share of his father's estate, this statement is refuted by the records of the probate Court. The records introduced in evidence show where M. H. Felder Real Estate Company has suffered substantial losses from time to time. These facts leave the question of the source of capital of M. H. Felder Real Estate Company clouded in mystery.

M. H. Felder Real Estate Company purchased a lot on Sellers Avenue in the City of Orangeburg from the General Land and Investment Company for a consideration of $7,252.00, which it subsequently conveyed to Grace K. Felder for a consideration of $2,000.00 thereby sustaining a loss of $5,250.00. M. H. Felder Real Estate Company purchased a farm in Orangeburg County for $3,100.00, which it subsequently conveyed to Grace K. Felder without consideration to itself, thereby suffering a loss of $3,100.00. M. H. Felder Real Estate Company purchased a house and lot on Glover Street in the City of Orangeburg for $3,000.00 which it subsequently conveyed to Janey Clark without consideration to itself, thereby suffering a loss of $3,000.00. As will subsequently appear the Glover Street property was granted to Janey Clark for the benefit of Grace K. Felder. It further appears that the Sellers Avenue property was subsequently sold by Grace K. Felder for $6,000.00. These losses sustained by M. H. Felder Real Estate Company directly accrued to the benefit of Grace K. Felder, who at that time was one of its officers and directors.

In November, 1936, Grace K. Felder purchased a house and lot on Amelia Street from H. A. Clark for the sum of $15,000.00, title to which was taken in her name. In payment of the purchase price Grace K. Felder sold the house and lot above mentioned, located on Sellers Avenue, to Ida K. Pearce for $6,000.00 and applied the proceeds of

this sale on the purchase price. M. H. Felder Real Estate Company conveyed the house and lot above mentioned, located on Glover Street, to Janey Clark, wife of H. A. Clark, at an agreed consideration of $3,250.00, and Grace K. Felder gave a mortgage in the sum of $5,750.00 to H. A. Clark on the Amelia Street property, payable $100.00 a week until $750.00 had been paid and the balance due one year from date. Weekly payments of $100.00 and a final payment of $50.00 in accordance with the terms of the mortgage were made to H. A. Clark by M. H. Felder & Company. Prior to the due date of the Clark mortgage and after $750.00 had been paid thereon, H. A. Clark assigned the mortgage to the First National Bank. Subsequent to this assignment and prior to its due date, $3,000.00 was paid the First National Bank on this mortgage, but how and by whom it has not been made to appear. On the due date of the mortgage Grace K. Felder gave a new mortgage on the Amelia Street property to the First National Bank in the sum of $3,500.00. The proceeds of this loan were disbursed by the bank as follows: $2,000.00 in satisfaction of the prior mortgage and the balance of $1,500.00 was placed to the personal credit of M. H. Felder. This latter mortgage was due and payable on the December 30th, following. On December 31st, one day after its due date, M. H. Felder & Company gave its check to the First National Bank for $3,500.00 in satisfaction of the mortgage by Grace K. Felder on the Amelia Street property. There never has been any accounting between Grace K. Felder, M. H. Felder, M. H. Felder Real Estate Company and M. H. Felder & Company with respect to this transaction.

Beginning January 1, 1937, M. H. Felder & Company kept a check register which with a cash receipt book appear to have been its only books. This check register and the cancelled checks introduced in evidence show a complete confusion of accounts, withdrawals, and credits by M. H. Felder, Grace K. Felder, M. H. Felder Real Estate Company, the children of M. H. Felder and Grace K. Felder,

and M. & H Grocery Company. No explanation of these accounts or the reason for the practice, worthy of consideration, has been offered.

W. R. Rousseau, an accountant employed by the Receiver of M. H. Felder & Company to audit its books, testified that no audit could be made prior to 1937, and that the records were so incomplete and confused subsequent to January 1, 1937, that it was impossible to make a complete and accurate audit of the affairs of M. H. Felder & Company; however, this check register and the cancelled checks of M. H. Felder & Company show a continuous practice on the part of M. H. Felder and Grace K. Felder of withdrawing large sums of money from M. H. Felder & Company for uses and purposes unrelated to the business of M. H. Felder & Company for which there has never been an accounting. M. H. Felder, when on the witness stand in testifying in relation to a portion of these withdrawals, stated that they were carried on the books of the company in an account marked "personal" and at the end of each year charged off. There is no necessity for the Court to make any attempt at this time to unravel and set up these various accounts; suffice it to say that they amount to many thousands of dollars.

Some time in the late summer or fall of 1939, M. H. Felder commenced opening a chain of retail food stores, which he contended were his personal property. These stores were stocked with merchandise of M. H. Felder & Company and in most instances appear to have been invoiced by M. H. Felder & Company to the stores. These invoices carry two prices; one the cost price to the store, which was approximately the cost price to M. H. Felder & Company, and the other was a price fixed by M. H. Felder & Company at which price these stores were required to resell the merchandise. This practice was followed before and after incorporation of M & H Grocery Company. Practically all of the fixtures for these stores were bought by M. H. Felder & Company and in most instances chattel mortgages

were placed on these fixtures by M. H. Felder & Company and these chattel mortgages apparently are liabilities of M. H. Felder & Company. The cost of these fixtures was never entered on the books of M. H. Felder & Company as a charge against the M & H Grocery Company although they amount to several thousand dollars.

On February 1, 1940, these food stores were incorporated under the name of M & H Grocery Company with a capital stock of $10,000.00. M. H. Felder and Grace K. Felder were at the time of incorporation and still are the sole officers and stockholders of the corporation. It appears that these stores did not commence to function as a separate entity until February 13, 1940, at which time M. H. Felder & Company was insolvent.

On February 13th, M. H. Felder & Company set up a memorandum account of $3,000.00 as the amount due by M & H Grocery Company as the balance due for merchandise sold M & H Grocery Company by M. H. Felder & Company, which amount appears to have been a simple estimate while the actual inventory as of that date was $5,216.32. This difference of $2,216.32 was never entered on the books of M. H. Felder & Company as a charge against the M & H Grocery Company.

On February 14th, M. H. Felder & Company transferred three trucks and one large trailer to the M & H Grocery Company, all of which were the property of M. H. Felder & Company. No charge is made in the records of the latter company for the sale or transfer of these items, nor has any accounting been had with respect to them. The auditor, after allowing for depreciations, fixes their value at $2,709.79, and set them up in his report as an item due M. H. Felder & Company by M & H Grocery Company.

The defendants in this proceeding have consistently maintained that there was due by M & H Grocery Company only $1,934.99, being charges due M. H. Felder & Company for merchandise sold to M & H Grocery Company subsequent to February 14, 1940. The audit of W. H. Rousseau &

Company fixes the amount due by M & H Grocery Company to M. H. Felder & Company at $10,319.34. The audit of Mr. Gooding, the auditor for the defendants, fixes this amount approximately at $4,400.00. However, when Mr. Gooding's audit is analyzed there is no material difference between his figures and Mr. Rousseau's. Mr. Gooding did not include the value of the trucks in his audit for the reason as stated by Mr. Gooding that Mr. Felder had declared that the trucks belonged to him, Mr. Felder, personally and should not be included in the audit, which statement Mr. Gooding stated that he accepted without question. Further, Mr. Gooding did not charge M & H Grocery Company with its inventory on hand as of February 13th, because, Mr. Gooding stated that in his opinion M & H Grocery Company was a separate entity prior to that time. He also stated in effect that if it should be made to appear that M. H. Felder & Company paid any of the organization and other expenses of M & H Grocery Company prior to February 13, 1940, that he would not consider these organizations as separate, but would have to consider them one and the same. After the defendants closed their case, the plaintiff introduced numerous paid invoices together with checks issued by M. H. Felder & Company in payment thereof for goods and services rendered the stores which now constitute M & H Grocery Company, for which there has never been accounting between the two organizations. In fact, it appears that, among other things, M. H. Felder & Company paid the charter fees to the Secretary of State for M & H Grocery Company and charged this item to an account headed "Miscellaneous Expense" in its books. After this evidence was introduced, Mr. Gooding was not recalled to the stand, although he was present when these documents were introduced in evidence and was also present when all parties rested.

The testimony shows that M. H. Felder & Company conducted its business in a large wooden warehouse facing on Russell Street in the City of Orangeburg and annexed to

the rear of this warehouse was a large brick warehouse divided into two compartments. From the deeds and plats introduced into evidence, the wooden warehouse and about one-third of the brick warehouse are situate on a lot owned by M. H. Felder for his life and after his death to his children. The balance of the brick warehouse is situate on a lot owned by M. H. Felder Real Estate Company. The books óf M. H. Felder & Company carry as an asset one brick building costing on January 1, 1925, $1,200.00 and also as an asset a refrigeration plant installed partly in the wooden warehouse and partly in the brick warehouse on January 1, 1925, at a cost of $9,000.00; and also as another asset of M. H. Felder & Company additional refrigeration plant installed in the brick warehouse in 1938, at a cost of $7,448.50. The above assets were acquired with money of M. H. Felder & Company and placed on real estate belonging to M. H. Felder and his children and M. H. Felder Real Estate Company. There has been no accounting between M. H. Felder & Company, M. H. Felder Real Estate Company, M. H. Felder and his children with respect to the improvements and fixtures placed on this property by M. H. Felder & Company.

On July 20, 1938, check No. 11532 for $1,200.00 was issued to M. H. Felder by M. H. Felder & Company bearing a notation "Loan repaid." On October 1, 1938, check No. 12039 for $1,000.00 was issued to M. H. Felder by M. H. Felder & Company bearing notation "Loan repaid." On June 24, 1939, check No. 14163 for $1,000.00 was issued to M. H. Felder by M. H. Felder & Company, and on September 9, 1939, check No. 14848 for $700.00 was issued to M. H. Felder by M. H. Felder & Company. Mr. Felder stated on the witness stand that these checks aggregating $3,900.00 were issued to him for money advanced by him to M. H. Felder & Company. These checks remained in the possession of Mr. Felder from their dates of issue until February 13, 1940, when they were delivered to M. H. Felder & Company as a part payment on an invoice of $4,-

765.44 for merchandise purchased by M & H Grocery Company. Mr. Felder stated on the stand that he knew that M. H. Felder & Company did not have sufficient funds at that time to pay these checks and that M. H. Felder & Company did not have sufficient credit to raise funds with which to pay these checks; that the only way that M. H. Felder & Company could have gotten funds to pay these checks would have been by deferring other creditors. The effect of this transaction was to swap Mr. Felder merchandise of M. H. Felder & Company to be placed in the M & H Grocery Company for these long outstanding checks and grant himself a fraudulent preference in the assets of M. H. Felder & Company which accrued to the benefit of both himself and the M & H Grocery Company, in view of the further fact that the merchandise purchased with these checks were invoiced to M & H Grocery Company at approximately cost to M. H. Felder & Company.

In checking the rolling stock of M. H. Felder & Company the Receiver could not locate one Dodge truck and another truck and large trailer. The Receiver made a demand on all of the defendants for any and all property in their possession or under their control belonging to M. H. Felder & Company and was informed by the defendants that they had none. Subsequently, on receiving information that the above-mentioned Dodge truck was being used by M. H. Felder in the operation of the farm owned by Mrs. Grace K. Felder, he went to the farm and specifically demanded this truck from M. H. Felder, Mr. Felder denied having the truck and refused to give any information as to its whereabouts. In the hearing before me it developed that this truck was at that time in Mr. Felder's possession and being used by him in these farming operations. Up to the closing of the hearing before me the Receiver had been unable to locate the large truck and trailer above referred to. However, he testified that he had received information that the same was in a paint shop in Columbia and upon receipt of that information he went to Columbia

in search of the truck and trailer but had been unable to locate it.

M. H. Felder and Grace K. Felder, each, have in their possession an automobile paid for either in whole or in part by M. H. Felder & Company which they have refused to deliver to the Receiver. It is claimed by the defendants that these automobiles are personal property of M. H. Felder and Grace K. Felder. The records of the sales and purchases of these automobiles together with the record of their having been mortgaged show these automobiles to be the property of M. H. Felder & Company. The attempted explanation of these transactions as made by M. H. Felder on the witness stand was not at all satisfactory to this Court.

The credit of M. H. Felder, Grace K. Felder, M. H. Felder & Company, M. H. Felder Real Estate Company and M & H Grocery Company seems to have been so thoroughly intermingled that in the present state of the record, it might be best expressed by stating that the credit of these defendants was pooled and drawn upon by M. H. Felder and Grace K. Felder for the benefit of themselves and any one or all of their corporations in the manner that appeared at the time to be most convenient without regard for the purpose or use to be made of that credit.

Prior to February 13, 1940, all of the business of M. H. Felder, Grace K. Felder, M. H. Felder & Company, M. H. Felder Real Estate Company and the retail food stores, was conducted in and through the office of M. H. Felder & Company located in its warehouse on West Russell Street in the City of Orangeburg where all books were kept. It even appears that all or a greater portion of the personal business of M. H. Felder and Grace K. Felder went through the books of M. H. Felder & Company, such as various household expenses including grocery bills, water and light bills, drug bills, and personal expenses such as doctors' bills, clothing bills, funds used for pleasure and recreation. And it further appears that it was the regular practice to handle

all farming operations from the office and through the books of M. R. Felder & Company. All tax matters for all defendants appear to have been paid by M. H. Felder & Company without any accounting. In fact, M. H. Felder & Company, through its office, seems to have been a general clearing house through which funds of all the defendants passed at one time or another. It further appears that all members of the Felder family, including the children, had the privilege of checking against the bank accounts of M. H. Felder & Company. On February 14th, M & H Grocery Company opened a separate warehouse after which a portion of its business was conducted from that warehouse, however, control of M & H Grocery Company seems to have been maintained by the officers and employees of M. H. Felder & Company and exercised through the office of M. H. Felder & Company.

The Receiver reported that he had claims, including tax claims, in excess of $66,000.00 filed with him. The auditor reported that in addition to the $66,000.00 reported by the Receiver that there were in excess of $25,000.00 in outstanding claims, which $25,000.00 includes outstanding and unpaid checks of M. H. Felder & Company of $16,799.91, which, upon reconcilement, would probably show some duplications of the claims already filed with the Receiver. No call for creditors has yet been made, therefore, at this time it appears that the indebtedness of M. H. Felder & Company will be somewhere between $66,000.00 and $90,000.00. From the facts before me it would appear that $10,000.00 would be a liberal estimate of the funds which the Receiver will be able to realize from the assets of M. H. Felder & Company applicable to these obligations. This would leave a net deficit in excess of $56,000.00. The sworn returns of M. H. Felder and Grace K. Felder state that they have combined assets of $58,575.00. These assets include their stock in the defendant corporations. The returns of M. H. Felder and Grace K. Felder show a combined indebtedness of $10,-800.00 which leaves $47,775.00 as the net worth of these

defendants, according to their own valuation, with which to pay an indebtedness in excess of $56,000.00. It thus appears that the combined liabilities of the defendants are far in excess of their combined assets.

In view of the insolvency of the defendants and their previous conduct the Court is strongly of the opinion that their assets and affairs should be taken over by the Court for the protection of creditors.

In the above resume the Court has not endeavored to set out the fact in detail—it has merely attempted to touch upon some of the more prominent transactions and outline the general situation with which it was faced. Apparently M. H. Felder actively managed the affairs of all defendants, however, his wife, Mrs. Grace K. Felder, not only acquiesced in the method adopted by M. H. Felder for the Management of the affairs of the defendants but also received the benefits resulting therefrom, and for the present, at least, they must be held *in pari delicto*.

This record is the record of a course of conduct adopted by two individuals wherein corporate fictions were used by these two individuals for the purpose of enriching themselves at the expense of their creditors and in which the conduct of the individuals violates the sanctity of the corporations with such reckless abandon that this Court must pierce the corporate veil for the purpose of discovering the parties responsible for this course of conduct and hold them liable as an association of persons. There appears to be an absolute unity of interest of M. H. Felder and Grace K. Felder with the defendant corporations and an adherence to the fiction of the separate existence of the corporations would, under the facts now before the Court, sanction fraud and promote injustice.

In conclusion, I wish to reiterate that all that I have attempted to do in this and my former order made on June 8, 1940, is to ascertain whether or not the Court would be warranted in appointing a Receiver and granting such re-

lief as is relevant to that particular phase of the case at this time, and I have refrained from making a final adjudication on any issue of fact in controversy, but on the contrary wish it clearly to be understood that no such controverted issue is intended to be finally determined herein; but that the right to all parties hereto further to introduce testimony, or to have the testimony now before the Court finally determined on its merits is hereby expressly reserved to all parties to this action. It is, therefore, ordered, that my order of June 15, 1940, be, and the same hereby is, confirmed in every particular.

It is further ordered, that P. F. Haigler, as Receiver, be, and he is hereby, authorized to purchase such additional stock for use in the business of M & H Grocery Company as may be necessary to render the stock of merchandise on hand saleable, pending final disposition of the assets of the said M & H Grocery Company.

*Messrs. Felder & Rosen* and *Zeigler & Brailsford,* for appellants,

*Messrs. Adam H. Moss, James A. Moss, Reddick A. Bowman* and *Carroll E. Summers,* for respondent, 

February 12, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

After a painstaking examination and consideration of the lengthy record in this case, and the ·briefs of counsel, we are satisfied that all issues raised by the appeal were correctly decided by the Circuit Court in its comprehensive decree. In our view a *prima facie* showing was made which warranted the appointment of a Receiver, and this was all that the lower Court undertook to adjudge. A final determination of the issue on its merits was expressly reserved, with the right granted to all of the parties to introduce further testimony.

We adopt the decree as the judgment of this Court. Let it be reported.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.